UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
FRANK H. FINKEL, et al.,

                Plaintiff(s),

         **REPORT AND**
         **RECOMMENDATION**

    -against-

         CV 05-3090 (DRH)(WDW)

CLOSTER DOCK STEEL CORP., INC. and
HAROLD F. DAVIS,

                Defendant(s).
------------------------------------------------------------X

**WILLIAM D. WALL, United States Magistrate Judge:**

A default judgment having been entered, District Judge Hurley referred the inquest on damages to the undersigned by order dated October 5, 2006. By order dated October 10, 2006, the undersigned gave the plaintiffs an opportunity to submit additional papers, and they did so, filing the Supplemental Declaration of Molly Brooks [DE#14] on December 5, 2006. For the reasons set forth herein, the undersigned recommends that the plaintiffs be awarded: (1) $1,656.40 in contributions for the Audit Period of April 2, 2003 through June 30, 2005; (2) $1,918.22 in interest on the contributions through December 5, 2006; (3) $1,918.22 in liquidated damages; (4) $1,110 in audit fees; (5) $6,302.50 in attorney's fees and costs; and (6) additional interest and liquidated damages continuing to accrue on a daily basis commencing on December 6, 2006. The undersigned does not recommend that defendant Harold Davis be found jointly liable.

### BACKGROUND

The plaintiffs, Trustees of the various Local 282 Trust Funds, initiated this action on June 28, 2005 by filing the Complaint and issuing a summons to defendants Closter Dock Steel Corporation and Harold F. Davis. The defendants did not answer or otherwise appear, and the

plaintiffs moved for entry of default and a default judgment on June 29, 2006. The Clerk of the Court entered a notation of default on September 19, 2006 and Judge Hurley entered an order granting default on October 5, 2006, thereafter referring the issue of damages to the undersigned.

**DISCUSSION**

A default constitutes an admission of all well-pleaded factual allegations in the complaint, except those relating to damages. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). A default also "effectively constitutes an admission that the damages were proximately caused by the defaulting party's conduct: that is, the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged." *Cablevision Sys. New York City Corp. v. Abramov*, 980 F. Supp. 107, 111 (E.D.N.Y. 1997). The movant need only prove that the "compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." *Greyhound*, 973 F.2d at 159. The amount of damages can be determined without a hearing as long as the Court satisfies itself, through affidavits or documentary evidence, that the amount is reasonable. *See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 111 (2d Cir. 1997).

The plaintiff trustees' Funds are multi-employer employee benefit plans established within the meaning of Sections 3(3) and 3(37) of ERISA, 29 U.S.C.§1002(3) and §1002(37). *See* 6/29/06 Brooks Decl. ¶6-7 [DE#5-1]. The Funds are governed by the Restated Agreement and Declaration of Trust (the "Trust Agreement"). *Id.* ¶8, Ex.B. Closter and Local 282 were parties to the Building Material Contractors Industry Agreement for the period from July 1, 2002 through June 30, 2005 (the "CBA"), effective April 2, 2003. *Id.* ¶9, Ex.C. The CBA incorporates by reference the Trust Agreement. *Id.*¶11.

Pursuant to the CBA, Closter was required to remit monthly contributions to the Funds on behalf of all covered employees, and the Trust Agreement requires employers, including Closter, to submit audits of their books and records to verify that the employer has remitted the required amount of contributions to the Funds. *Id.* ¶13-14. Pursuant to Article IX, Section 1(d) of the Trust Agreement, the Trustees may also audit "any other business entity which is affiliated with [Closter] . . . and which either: 1) has employed persons who have performed the same type of work as the employees of the Employer covered by the Union agreement, or 2) is part of a group of trades or business 'under common control.'" *See* Ex. B at 27-28.

According to Ms. Brooks, the plaintiffs sought an audit of Closter for the period from April 2, 2003 through the date of the audit. After commencement of this lawsuit, Closter submitted to an audit for the period April 2, 2003 through June 30, 2005 ("the Closter Audit"). Closter also submitted for audit the books and reports of its affiliate company, Hillside Iron Works, Inc., for the period from April 2, 2003 through June 30, 2005 ("the Hillside Audit"). *See* 6/29/06 Brooks Decl. at ¶17. The plaintiffs report that both audits showed that one driver ("Driver A") was reported to the Funds by Closter as having performed work under the CBA for which contributions were due, but was paid by Hillside. Accordingly, the Closter Audit reflects that Closter has a credit of $1,656.40 for contributions remitted on behalf of Driver A. *See id.* ¶18 & Ex. D. The Hillside Audit reflects that Closter owed the Funds $4,942.02, consisting of $3,312.80 in delinquent contributions owed on behalf of Driver A, and $1,629.22 in interest through May 31, 2006. *See* Ex. E.

Closter's failure to pay the amounts due on the Hillside Audit constitutes a failure to make contributions in accordance with the terms of the Fund documents and is a violation of

3

Section 515 of ERISA, 29 U.S.C. 1145. Pursuant to 29 U.S.C. §1132(g)(2), when, as here, a judgment has been entered in favor of a Plan, the court shall award the plan: (A) the unpaid contributions; (B) interest on the unpaid contributions; (C) an amount equal to the greater of (i) the interest on the unpaid contributions or (ii) liquidated damages . . . in an amount not to exceed 20% of the [unpaid contributions]; (D) reasonable attorney's fees and costs of the action, and (E) such other legal or equitable relief as the court deems appropriate.

Based on that ERISA provision, the plaintiffs, in their original motion papers, asserted that the total amount due from Closter for the Hillside Audit, as of June 29, 2006, after applying the credit of $1,656.40, was $4,310.62, consisting of $1,656.40 in delinquent contributions, $1,629.22 in interest through May 31, 2006, and $1,025.00 in audit fees, which includes a $220 cancellation fee. *See* Exs. F & G. In Ms. Brooks' Supplemental Declaration dated December 5, 2006, the plaintiffs updated those numbers and now seek a total of $12,905.34, consisting of: (1) $1,656.40 in contributions for the Audit Period of April 2, 2003 through June 30, 2005; (2) $1,918.22 in interest on the contributions through December 5, 2006; (3) $1,918.22 in liquidated damages; (4) $1,110 in audit fees; (5) $6,302.50 in attorney's fees and costs; and (6) additional interest and liquidated damages continuing to accrue on a daily basis commencing on December 6, 2006.

The interest calculations are based on a provision of the Trust Agreement that required Closter to pay interest on delinquent contributions that accrued prior to November 1, 2003, "at the rate specified in Section 5-501 of the General Obligations Law of the State of New York." *See* Ex. B at 30. For contribution obligations that accrue on or after November 1, 2003, the Trust Agreement, as amended, provides for an interest rate of 1 ½ percent a month. Here, the plaintiff

4

say that the delinquent contributions identified by the Hillside Audit accrued prior to November 1, 2003, and that the General Obligations Law rate thus applies.

The rate based on New York's General Obligations Law, which the plaintiffs say is 16%, has been the subject of judicial controversy, a history of which is provided by Ms. Brooks in her first Declaration. *See* 6/29/06 Brooks Decl. ¶¶23-28. The undersigned has taken the position that the applicable rate is not 16%, but 6%, as has District Judge Hurley. *See, e.g., LaBarbera v. Ferreira Bros. Contracting Co.,* CV 04-5709 (DRH)(WDW); *LaBarbera v. Italco Contracting, Inc.,* CV 04-2189 (DRH(WDW). Since those decisions, however, the Second Circuit has issued a Summary Order addressing the issue, and finding that the applicable rate is 16%. *LaBarbera v. Morrison,* CV 04-5927/04-5928 (2d Cir. July 20, 2006). Although this ruling is in a Summary Order that cannot be cited as precedential authority by attorneys, this court must recognize and respect the Second Circuit's reasoning. Thus, the rate of 16% will be applied.

The plaintiffs seek $$6,302.50 in fees and costs, consisting o $5,257.50 in attorney's fees and &1,045 in costs. In her original declaration, Ms. Brooks sets forth the basis for the attorney's fees and costs in this action and has provided documentation for those fees and costs. *See* ¶¶32-39. The undersigned finds the fees and costs sought to be both reasonable and adequately supported. The same is true of the audit fees, which were set at $1025 in the original papers and increased to $1,110 in the supplemental papers.

The undersigned recommends that, based on the record before it and pursuant to 29 U.S.C. §1145 and §1132(g)2), the plaintiffs be awarded those amounts set forth in the Brooks Declaration dated December 5, 2006, totaling $12,905.34, with continuing interest and liquidated damages.

5

The plaintiffs allege that not only Closter is liable for the monies owed, but that Davis, the president of Closter, is individually liable as well. They base this claim on the fact that Closter's corporate status was revoked on December 16, 1997 for failing to file an annual report with the New Jersey Department of the Treasury for more than two consecutive years. *See* Ex. H. Pursuant to New Jersey Business Corporation Act, N.J.S.A. 14A:4-5(5), the revocation of Closter's corporate status results in the voiding of all powers conferred by law upon Closter. *See* N.J.S.A. 14A:4-5(5) ("In the event a domestic corporation fails to file an annual report for two consecutive years with the State Treasurer . . . the State Treasurer may issue a proclamation declaring that the certificate of incorporation of the corporation has been revoked and that all powers conferred by law upon it shall thereafter be inoperative and void.") Based on this, the plaintiffs argue, "[o]fficers of a corporation shall be individually liable for the debts of a company that has lost its corporate status." Brooks Decl., ¶20 (citing *Asbestos Workers Local Union No. 32 v. Shaughnessy,* 306 N.J. Super. 1, 4, 703 A.2d 276, 277-78 (holding that corporation's principals were not personally liable for its obligations because corporate status had been restored)).

The undersigned is not convinced that the cited case allows this court to impose individual liability on Mr. Davis. Although the New Jersey appellate court grounded its decision that individual liability could not be imposed primarily on the fact that corporate status had been reinstated and that the reinstatement was retroactive, it also discussed reasons why the imposition of individual liability is a drastic result, that could "cause havoc" in the business community if widely applied. 703 A.2d at 277. The undersigned thus does not recommend that individual liability be imposed on Mr. Davis.

6

## OBJECTIONS

A copy of this Report and Recommendation is being electronically docketed on the date below. Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a courtesy copy to the undersigned within 10 days. Failure to file objections within this period waives the right to appeal the District Court's Order. *See* 28 U.S.C. §636 (b) (1); Fed. R. Civ. P. 72; *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York
February 12, 2007

 s/ William D. Wall
WILLIAM D. WALL
United States Magistrate Judge